UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00196-HBB

JEFFREY L. WHITE                                                                 PLAINTIFF

V.

KILOLO KIJAKAZI, ACTING COMMISSIONER[1]
SOCIAL SECURITY ADMINISTRATION                               DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Jeffrey L. White ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 19) and Defendant (DN 25) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15).   By Order entered June 17, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>FINDINGS OF FACT</u>

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on February 2, 2016 (Tr. 183, 378-79, 380-83).   Plaintiff alleges to have become disabled on April 11, 2013,[2] as a result of Triple Bypass, high blood pressure, high cholesterol, gout in feet and knees, depression and anxiety, nervousness, and a learning disorder (Tr. 120-21, 133-34, 151, 162, 183, 418).   These claims were initially denied on August 4, 2016, and the claims were again denied upon reconsideration on November 29, 2016 (Tr. 118-19, 131, 149, 161, 177-79, 183).[3]   On August 29, 2018, Administrative Law Judge Roosevelt Currie rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 183-93).   Thereafter, the Appeals Council reviewed the decision and remanded the matter back to an administrative law judge (Tr. 201-03).

Subsequently, Administrative Law Judge Steven Collins ("ALJ") conducted a video hearing from Louisville, Kentucky on February 10, 2020 (Tr. 26, 47).   Present at the hearing from Bowling Green, Kentucky was Plaintiff and his attorney Charles Dale Burchett[4] (Id.).   During the hearing, Sharon J. Cornett testified as an impartial vocational expert (Id.).

On April 1, 2020, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 26-36).   At the outset, the ALJ found that Plaintiff meets the

---

2   Plaintiff, in his initial applications, alleged to have a disability onset date of July 1, 2014 (Tr. 26, 183).   On August 29, 2017, Plaintiff amended his onset date to April 11, 2013 (Tr. 26, 183, 387).

3   The first administrative decision listed the initial denial date as August 8, 2016, and the reconsideration denial date as December 1, 2016 (Tr. 183).   The Disability Determination and Transmittal documents and the dates accompanying the Disability Adjudicator's signature list the initial denial date as August 4, 2016, and the reconsideration denial date as November 29, 2016 (Tr. 118-19, 131, 149, 161, 177-79).   Thus, the Court will use the dates reflected in the signatures and documents.

4   The second administrative decision noted that Plaintiff was represented by an attorney, Charles Dale Burchett (Tr. 26).   At the administrative hearing, however, Plaintiff was virtually present with Mary Burchett-Bower, an attorney at the same firm (Tr. 47).   Both were denoted as Plaintiff's representatives in a previous filing (Tr. 205).

insured status requirements through June 30, 2013 (Tr. 28).   Turning to the sequential process, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 11, 2013, the alleged onset date (Id.).   At the second step, the ALJ determined Plaintiff has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), osteoarthritis, peripheral vascular disease, anxiety disorder, and substance abuse disorder (Id.). The ALJ opined that Plaintiff has "a nonsevere hernia and hypertension" (Tr. 29).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except for the following limitations: Plaintiff may stand/walk for about four hours and sit for up to six hours in an eight-hour workday, with normal breaks; he may occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs, but he may never climb ladders, ropes or scaffolds; he may frequently reach overhead with the bilateral upper extremities; he must avoid concentrated exposure to extreme cold, extreme heat, heights, moving machinery, and similar hazards; he must avoid moderate exposure to dusts, odors, fumes and pulmonary irritants; he is limited to simple, routine, repetitive tasks, without quotas or fast paced production work; and he can occasionally have contact with supervisors, coworkers, and the public Tr. 31).   The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 35).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 35-36).

Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 11, 2013, the alleged onset date, through the date of the decision, April 1, 2020 (Tr. 36).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 376-77). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not

4

the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cotton, 2 F.3d at 695-96.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and

Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 *et seq*., 1381 *et seq*.

The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v.

Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)   Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Waiver of DIB Claim

As noted in the Findings of Fact, the ALJ found that Plaintiff had not been under a disability from April 13, 2013, the alleged onset date, through the date of the ALJ's decision, April 1, 2020 (Tr. 36).   This finding denies Plaintiff's application for Disability Insurance Benefits (Id.).   In his Fact and Law Summary, Plaintiff contends, as will be discussed in more depth below, the ALJ's RFC finding "is not supported by the evidence of record for the period at issue *in the claim for [Supplemental Security Income] benefits*" (DN 19, p. 3) (emphasis added).   Throughout the remaining parts of his argument, Plaintiff does not contend that his challenge extends to his application for Disability Insurance Benefits (*see* id. at pp. 3-6).

The Sixth Circuit affirmed a district court's finding that "[a] claim raised for the first time in objections to a magistrate judge's report is deemed waived."   Swain v. Comm'r of Soc. Sec., 379 F. App'x 512, 517-18 (6th Cir. 2010).   Thus, when looking to the circumstances here, Plaintiff's decision not to present an argument pertaining to the Disability Insurance Benefits aspect of his claim waives the issue.   *See* id.; *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Plaintiff's Supplemental Security Income claim, however, survives to be considered on the merits.

Challenge to Finding No. Five: RFC Determination and Stand/Walk Limitations

1.   Arguments of the Parties

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence (DN 19, p. 3).   Specifically, Plaintiff focuses on the ALJ's finding that Plaintiff has the ability to stand/walk for about four hours in an eight-hour workday, with normal breaks, and Plaintiff

6

contends that this is unsupported "for the period at issue in the claim for [Supplemental Security Income] benefits" (Id.).   Plaintiff reviews the medical opinions of the State agency physicians, the consultative evaluator, and Plaintiff's primary care provider and contends that "[n]one of these opinions support the ALJ's finding" regarding the stand/walk limitation during the relevant Supplemental Security Income timeframe (Id.).   While the ALJ found that Plaintiff can be on his feet longer than the State agency physicians believed because of a positive response to surgery, Plaintiff asserts, "[t]he ALJ fails to consider that the State agency medical consultants reviewed [the documents about the response to surgery]" (Id. at p. 4).   Included in this argument is also the contention that the ALJ's findings of weight to medical opinions is not supported by substantial evidence and was improper, as "[t]he ALJ . . . rejected all of the opinion evidence in the administrative record regarding the ability to stand and walk and substituted his medical judgment of limitation based on his review of the medical evidence" (Id. at p. 5).

Defendant, in contrast, posits that "the ALJ evaluated the overall record evidence, including Plaintiff's subjective allegations, medical treatment, objective medical findings, and medical source opinions," so the ALJ's RFC determination is supported by substantial evidence (DN 25, p. 5).   After listing the examinations and studies that the ALJ considered, Defendant avers that "the ALJ explained the evidence that he relied on to find the standing/walking limitation that he assessed" (Id. at pp. 6-7) (citations omitted).   As for the argument about the medical opinions, Defendant contends, "[T]he presence of medical opinions does not dictate what the RFC should be.   While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner" (Id. at p. 8).   If Plaintiff's contentions can be construed as arguments that the ALJ erred in the assignment of weight to the various medical opinions,

7

Defendant discusses each opinion individually and asserts that the ALJ "reasonably discounted those opinions" and these findings were within the "permissible 'zone of choice' that grants ALJs discretion to make findings without 'interference by the courts'" (Id. at pp. 8-12) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).   Finally, Defendant cites to the Sixth Circuit's findings that "[a]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering an RFC finding" (Id. at pp. 8-9) (quoting Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010)).

    2.   Discussion

The RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (Commissioner is ultimately responsible for assessing a claimant's RFC).   An administrative law judge makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).   When crafting the RFC, the rules in 20 C.F.R. § 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record, as Plaintiff filed his applications prior to March 27, 2017 (Tr. 183, 378-79, 380-83).   The regulations require Administrative Law Judges to evaluate every medical opinion in the record.   20 C.F.R. § 416.927(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 416.927(c).   If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in

deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. § 416.927(c).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2).   In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

> The source of the opinion therefore dictates the process by which the Commissioner accords it weight.   Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. § 404.1527(c)(2).   If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.   *Id.* § 404.1527(c)(2).   These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996).   This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of

9

> the ALJ's application of the rule."   *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight."   The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling.   20 C.F.R. § 404.1527(c).   Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.   *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case.   Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)).   "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'"   Id. at 937.   The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.   Id. at 939 (citations omitted). However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

Id. at 940 (citations omitted).

10

In the present case, the ALJ recounted the medical evidence from April 2013 to January 2020 (Tr. 32-34).   This recitation included physical examinations, surgery, studies, complaints of pain and other symptoms, observations by medical providers, and treatment regimens (Id.).   Also included was the ALJ's determination of Plaintiff's subjective claims, where the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms complained but not to the extent as described concerning intensity, persistence, and limiting effects (Tr. 32).   *See* 20 C.F.R. § 416.929; SSR 16-3p.   Thereafter, the ALJ assigned weight to the medical opinions in the record, which are as follows: partial weight to the opinions of the State agency medical consultants; little weight to the opinion of the physical consultative examiner, Dr. Erin Priddy; little weight to the opinion of Plaintiff's primary care provider, Alysia Wheeler, APRN; partial weight to the psychological consultative examiner, Dr. Ollie Dennis; and "less weight" to the State agency psychological consultants (Tr. 34-35).

When focusing on Plaintiff's ability to stand and walk, the ALJ's review begins with Plaintiff's testimony at the administrative hearing (Tr. 32).   There, Plaintiff discussed his breathing problems, with caused issues with exertions such as walking (Id.).   Moreover, Plaintiff stated that he "ha[d] swelling and pain in his lower extremities, which further reduce[d] his ability to be on his feet[,]" as well as not being able to "walk 20-30 yards and stand for 5 to 10 minutes before needing to rest" and "sit[ting] for 10 to 15 minutes before his legs and feet went numb" (Id.; *see* Tr. 62-64, 69-70).   As noted above, however, the ALJ found his statements regarding intensity, persistence, and limiting effects to be "not entirely consistent with the medical evidence" (Tr. 32).   *See* 20 C.F.R. § 416.929; SSR 16-3p.

Turning to the medical documentation, the ALJ began with evidence which "support[ed] the existence of peripheral vascular disease with lower extremity swelling and loss of blood to the big toe on the left foot" (Tr. 33) (citing Tr. 543-62, 591-628). Thus, the ALJ remarked that Plaintiff required aortobifemoral bypass surgery to increase blood flow to his extremities, which was completed in 2015 (Id.) (citing Tr. 591-628). The ALJ noted that the surgery was successful (Id.). For example, prior to the surgery, Plaintiff's "vascular pulses were largely non-palpable or absent and imaging suggested stage I diastolic dysfunction" (Id.) (citing Tr. 591-628). These pulses became palpable after surgery and Plaintiff was noted to be walking well (Id.) (citing Tr. 629-57). Later records by the consultative examiner, Dr. Erin Priddy, documented normal gait and coordination, as well as an ability to sit and stand (Id.) (citing Tr. 715-21). The ALJ also recounted that there was no evidence of swelling in the extremities and that Plaintiff exhibited full strength (Id.) (citing Tr. 715-21). Additionally, Plaintiff "did not seek significant treatment for lower extremity problems after his surgery until 2017, at which time an ultrasound suggested only mild disease" of the common femoral artery (Id.) (citing Tr. 763-69). Thereafter, Plaintiff "was seen again briefly in June 2018 and again in January 2020 for lower extremity pain, though no lower extremity swelling was recorded" (Id.) (citing Tr. 812-20, 920-24). Thus, as a result of Plaintiff's lower extremity pain and swelling, the ALJ found that Plaintiff should be limited to 4 hours standing and walking per workday, as opposed to the 6 hours that are generally required under a "light work" RFC classification (Id.). The successful surgery, the ALJ explained, demonstrated that "no additional limitations are needed" (Id.).

Looking specifically to the medical opinions in the record, the State agency medical consultants opined an RFC where Plaintiff could stand and/or walk (with normal breaks) for a total

of 2 hours per day (Tr. 145, 172).   Dr. Priddy, the consultative examiner, opined a "medical source statement" where Plaintiff "is able to stand still for about 20-30 minutes, but longer with frequent repositioning (on the order of 1-2 hours)" and Plaintiff's "ability to walk varies significantly from day to day, in the range of 10-20 feet to ¼ mile" (Tr. 719).   Finally, Nurse Wheeler presented two opinions: (1) she simply stated that Plaintiff "suffers from many chronic medical conditions that keep him from obtaining any type of gainful employment" (Tr. 664); and (2) she completed a physical medical source statement and marked that Plaintiff is "incapable of even 'low stress' work" but did not complete the sections denoting her estimates of Plaintiff's physical function limitations (Tr. 809-11).   This second statement only contained a singular line commenting that Plaintiff is "unable to stand for long periods" but she does not explain this comment in any fashion (Tr. 808).   The ALJ explicitly detailed all of these opinions when crafting the RFC (Tr. 34).

When deviating from these opinions about the length of Plaintiff's ability to stand and/or walk, the ALJ explained that Plaintiff had a "positive response to surgery" (Tr. 34) (citing Tr. 591-628).   Plaintiff argues that "[t]he ALJ fails to consider that the State agency medical consultants reviewed [the post-surgery documents]" (DN 19, p. 4).   The ALJ makes no statements to the effect that the State agency medical consultants did not review this documentation (*see* Tr. 34).   Instead, the ALJ was able to consider the longitudinal medical record, including the records of medical visits years after the opinions were drafted, in evaluating the medical opinions. *See* Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole); Walker v. Sec'y of Health & Hum. Servs., 884 F.2d 241, 245 (6th Cir. 1989).   Moreover, the ALJ noted that Plaintiff's "positive response to surgery [did] not appear to be reflected in [Nurse Wheeler]'s statement[,]" in addition to lacking consideration of

13

improvement with medication or discussion about Plaintiff's inability to stand "for long periods" (Tr. 34) (discussing Tr. 807-11). Thus, the ALJ considered all the medical opinions in the record for their consistency with the longitudinal record and assigned weight respectively. 20 C.F.R. §§ 416.927, 416.929, 416.945(a), 416.946(c). When the ALJ viewed the opinions as deviating from the medical evidence, the ALJ detailed why lesser amounts of weight were awarded to the opinions and which evidence did not entirely support the medical opinion (*see* Tr. 34).

As for Plaintiff's argument that the ALJ acted as his own medical expert, there is a difference between an administrative law judge having the authority to make an RFC determination based upon the medical evidence and an administrative law judge "substitut[ing] his own medical judgment for that of a treating physician" to make independent medical findings. *See* Rhodes v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 193031, at *25 (W.D. Ky. Mar. 7, 2019) (quoting Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)). Indeed, "ALJs must not succumb to the temptation to play doctor[.]" Id. (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Looking to the medical evidence and the ALJ's opinion, however, it is clear that the ALJ in the present matter did not succumb to this temptation. At no point did the ALJ attempt to "interpret raw medical data in functional terms." *See* Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 726 (6th Cir. 2013). Instead, the ALJ used his authority to consider and discuss the relevant medical evidence and reports throughout his analysis and craft an RFC consistent with the evidence and opinions. While Plaintiff disputes the ALJ's assignment of weight to the medical opinions, the actions taken throughout the ALJ's decision are consistent with the applicable regulations and precedent. *See* 20 C.F.R. §§ 416.927, 416.929, 416.945, 416.946.

14

For the reasons discussed above, the ALJ's determination regarding the RFC, specifically the standing and/or walking limitation, is supported by substantial evidence and comports with applicable law.   As such, Plaintiff's challenge is awarded no relief.

Challenge to Finding No. 10: Step Five

1.   Arguments of the Parties

As a result of the previous challenge, Plaintiff contends that there is not evidence sufficient to demonstrate that jobs exist in significant numbers in the national economy that Plaintiff can perform (DN 19, p. 7).   If Plaintiff's argument about his RFC is accepted, then the hypothetical questions to the vocational expert about jobs reflecting the physical and mental limitations would not be accurately reflected; thus, the vocational expert's testimony to this end would not constitute substantial evidence to the fact (Id.) (citing Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987)).   Moreover, Plaintiff contends that "[t]he record warrants a favorable finding in the [Supplemental Security Income] claim at age 50 based on Medical Vocational Rule 201.14 . . . and vocational expert testimony . . . that when standing or walking is limited to about two hours in an eight-hour workday with the other limitations in the RFC there would be no light work" (Id.) (citing Tr. 81-82; 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Table 1).

Defendant counters by referring to the previous section and reiterates that "the ALJ properly assessed Plaintiff's RFC" which defeats this argument (DN 25, p. 13).   Even then, Defendant argues, "Plaintiff's contention that the record supported a favorable decision on his [Supplemental Security Income] claim as of the date that he attained age 50 (i.e., an award of benefits) is unavailing" (Id.).   Defendant maintains that Plaintiff has not "demonstrate[d] a clear entitlement to benefits" (Id.) (citing Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 176

15

(6th Cir. 1994)).   Therefore, even if the Court was to find that the ALJ's determination was lacking substantial evidence, the matter should be remanded, as opposed to awarding benefits here (Id. at pp. 13-14).

 2. Discussion

 The burden of proof does not shift to the Commissioner to establish plaintiff's ability to work until the fifth step of the evaluation.   Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional, and national economies that the plaintiff can perform, given his RFC.   *See* Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his/her limitations.   *See* Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Hum. Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987).   In making a determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and RFC.   20 C.F.R. § 416.920(f).

 A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Hum. Servs., 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental

16

impairments.  Varley, 820 F.2d at 779.   If the ALJ comes forward with evidence of job availability, the plaintiff must rebut that he can perform the identified job(s).  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).   The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.  Hardaway v. Sec'y of Health & Hum. Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*).   Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the plaintiff's unsubstantiated complaints.  Id.

The vocational expert identified a significant number of jobs that plaintiff could perform, which is the legal standard that the Commissioner must meet.  *See e.g.,* McCormick v. Sec'y of Health & Hum. Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine-county area of Dayton, Ohio); *accord* Barker v. Sec'y of Health & Hum. Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally).   It is for the Commissioner to evaluate the reliability of the vocational expert's testimony and to determine what constitutes a significant number.  *See* Hall, 837 F.2d at 275.

Plaintiff's argument to this step of the sequential analysis is premised upon finding his previous argument persuasive (*see generally* DN 19).   Plaintiff's argument is that the vocational expert's testimony does not provide substantial evidence to the step five determination, as the RFC proffered in the questioning was not accurate to Plaintiff's physical and mental limitations (Id. at p. 7).   However, as discussed at length above, the ALJ's RFC determination is based on

substantial evidence and comports with applicable law, which defeats Plaintiff's contentions.   As the ALJ's questioning to the vocational expert expressed physical and mental limitations comparable to those of Plaintiff (Tr. 79-84), the vocational expert's testimony about the availability of jobs provides substantial evidence.   Thus, the ALJ's reliance upon the vocational expert's testimony for the step five determination is supported by substantial evidence and comports with applicable law.   Plaintiff's alternative argument for step five looks to the GRID rules of Appendix 2 (DN 19, p. 7).   Plaintiff asserts "[t]he record warrants a favorable finding in the SSI claim at age 50 based on Medical Vocational Rule 201.14 . . ." (Id.).

When the ALJ's findings concerning a claimant's age, education, previous work experience, and RFC coincide with all of the criteria of a particular Grid Rule within the medical-vocational guidelines, the ALJ may rely on that Grid Rule to satisfy his burden.   20 C.F.R. § 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   However, if the ALJ's findings do not coincide with all the criteria, then the ALJ is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.   20 C.F.R. § 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981).   For example, if the claimant suffers from an exertional and a non-exertional impairment, then the Grids may be used only as a framework to provide guidance for decision making.   20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpt. P, App'x 2, 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-29.

18

As discussed above, the ALJ's RFC finding of light work with limitations is supported by substantial evidence.   In his Fact and Law Summary, Plaintiff concedes that the ALJ's findings as to past relevant work, age, and education are supported by substantial evidence (DN 19, p. 6). Plaintiff, therefore, was born in 1967; was 46 years old at the time of filing his applications, which placed him in the age category of "younger individual", and 53 years old at the time of the ALJ's decision, which placed him in the age category of "closely approaching advanced age"; has at least a high school education; and is able to communicate in English (Id.; *see also* Tr. 35).   Looking to Table 2 of Appendix 2, a claimant who is limited to light work, is an individual closely approaching advanced age, and is a high school graduate or more is directed to be found "not disabled," regardless of transferability of previous work experience.   20 C.F.R. Part 404, Subpt. P, App'x 2, 202.14-.15.   The ALJ is directed to the same findings when considering a "younger individual" with the same RFC, education, and previous work experience.   20 C.F.R. Part 404, Subpt. P, App'x 2, 202.21-.22.

The ALJ's decision notes the applicable regulations and how the Medical-Vocational Rules may be considered as a framework (Tr. 36).   Thereafter, the ALJ considers the findings of Medical-Vocational Rules 202.21 and 202.14 and comes to the same conclusion as the previous paragraph (Id.).   The ALJ then used the vocational expert's testimony regarding the number of jobs in the national economy (Id.).

These are the actions that administrative law judges are directed to follow as directed by the regulations and applicable precedent.   Thus, using the Medical-Vocational Rules as a framework and utilizing the vocational expert's testimony is supported by substantial evidence and comports with applicable law.   As such, Plaintiff's challenge to this finding is unavailing.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

May 13, 2022

Copies:        Counsel of Record

20